# NASHVILLE TRUST COMPANY v. SOUTHERN BUYERS, Inc.—288 S. W. (2d) 469.

Middle Section. January 6, 1956.

Petition for Certiorari denied by Supreme Court, April 5, 1956.

12

Bailey, Ewing & Powell, Nashville, for Nashville Trust Company.

Ned Lentz and R. T. Cochran, Nashville, for Southern Buyers, Inc.

FELTS, J. This bill was filed by the Nashville Trust Company against Southern Buyers, Inc., to recover $3,833.46, alleged to be due complainant as holder in due course of two checks which were drawn in defendant's name by its agent on its account with another bank and on which it stopped payment.

Defendant by answer denied it was liable on these two checks, and by cross-bill sued complainant for $15,069.44, the amount of 16 other checks which defendant alleged its employee had illegally and fraudulently drawn on its account and converted to his own use by cashing some of

them at complainant bank and depositing the others in his account there. It was charged that complainant had notice and aided his conversion of the funds.

The cause was heard upon the pleadings and proof by depositions, and the Special Chancellor hearing it entered a decree for complainant for the sum sued for and dismissed the cross-bill. Defendant appealed to this Court.

Complainant is a banking institution in Nashville. Defendant is a corporation which was organized by W. H. Grissim, Jr., for the conduct of his business of buying and selling livestock at the Nashville stockyards. It is a one-man corporation, Mr. Grissim being its principal director, its president, and the owner of all of its capital stock except one share held in the name of his wife and another in the name of a Mrs. Pearson when she was his bookkeeper, to qualify them as directors.

The agent here involved was one H. A. King, who sometimes signed his name Herb King. He was employed by defendant from February 1946 until October 17, 1948. During this period Mr. Grissim gave all his time to the buying and selling of livestock, and King looked after the bookkeeping, collections, receipts, and disbursements. He handled about $100,000 per day. Defendant carried its bank account in the Third National Bank in Nashville.

Defendant placed with its bank a signature card authorizing checks on its account to be signed in its name by H. A. King, without any instructions to the bank or any limitation on his authority. He was authorized to draw all the checks for the corporation, including checks to himself for his salary and his bonuses. Indeed, so far as appears, he was the only person authorized to sign checks for defendant. He was supplied with blank form checks

which did not indicate his office or relation to the corporation but apparently gave him unlimited authority to sign its name. As a sample, we quote one of these checks as filled out by him:

"Southern Buyers, Inc.        No. 27929

Live Stock Buyers

       Nashville, Tenn. Dec. 8, 1947

Pay to the
  order of H. A. King        $574.50

       Exactly $574 & 50 cts.        dollars

For

Third National Bank        Southern Buyers, Inc.
  in Nashville
Nashville, Tenn.        By (Signed) H. A. King."

It was with the above check that he opened his account in complainant bank December 9, 1947. He had had an earlier account with complainant which was begun in July 1943 and closed in August 1947. He started his second account, with which we are here concerned, by endorsing and depositing this check for $574.50. This account was carried in the name of "Herb King". At the time of opening this account, from the information he gave complainant's officer as to his occupation, the officer made the following entry on his signature card: "Runs Southern Buyers, Inc.". This was all the information complainant had about him.

Complainant in the ordinary course of business accepted this check for deposit, credited Herb King's account with $574.50, and the check passed through the clearing house and was paid by defendant's bank, the Third National Bank. Likewise, in the month of December, 1947, King deposited to this account three more checks drawn by him on defendant's account with the Third National Bank, one of such checks being for $900

December 16, one for $600 December 19, and one for $200 December 23. In January, 1948, he deposited three more checks, one for $1,000 and two for $1,200 each. In some of these instances, he received part of the check in cash and deposited the rest to his account.

In like manner, he continued to deposit to his account checks drawn by him in the same way on defendant's account, and defendant's bank continued to pay them until October 15, 1948. On that day King presented to complainant bank a check drawn by him to himself on defendant's account for $2,800, received $2,000 in cash, and deposited $800 to his account. On the next day, Saturday, October 16, he presented another like check to complainant bank for $2,300, received $1,100 in cash and deposited the remainder of $1,200 to his account. At the same time he drew a check against his account for $750, which was cashed by complainant for his wife.

On the next day, Sunday, October 17, Mr. Grissim learned that King and his wife had absconded. On the following day he ordered defendant's bank to stop payment on all its checks that might be outstanding, and payment was stopped on the two checks that had just been negotiated by King to complainant, the check for $2,800 and the one for $2,300. To protect itself as much as possible, complainant charged back the remainder of the credit of Herb King against said checks, the amount of his balance being $1,266.54, which left an overdraft of $3,833.46, as the result of defendant's stopping payment of these two checks.

It was afterwards discovered that King had been misappropriating large amounts of defendant's funds over a period of more than two years. But complainant had no knowledge of his misappropriations and no notice

16

other than such as might be given by the form of the checks, together with the other circumstances. We think this was insufficient to affect complainant with notice.

It is true we have in this state a strict rule of liability on depositing banks in the case of trust funds of administrators, guardians, and other conventional trustees, whose duties are more or less strictly regulated by statutes or court decrees, of which banks and other persons are presumed to have knowledge. But that rule does not extend to business agencies where the agent's authority is fixed by private contract of the parties.

Earlier cases applying that rule were reviewed by Mr. Justice Chambliss in New York Life Insurance Company v. Bank of Commerce & Trust Company, 172 Tenn. 226, 231-236, 111 S. W. (2d) 371, 115 A. L. R. 643, 646-648; and it was there held that the word "agents", following the name of a payee of a check, was insufficient to charge a depositing bank with notice of the agent's intention to convert the funds of his principal.

In Litchfield Shuttle Co. v. Cumberland Valley National Bank, 134 Tenn. 379, 183 S. W. 1006, the company's agent, with authority to draw checks on its account with the bank, drew checks payable to certain persons, forged their endorsements, cashed the checks, and converted the money. It was held that the bank had no notice of the agent's fraud and that the act of the agent in issuing the checks, with the forged endorsements thereon, was the act of the company itself; and that under section 65 of the N. I. L., Code sec. 7389, the company, by issuing the checks with the endorsements thereon, warranted that they were genuine and by section 23, N. I. L., Code sec. 7347, the company was precluded from setting up the forgeries.

In Tennessee Products Corporation v. Broadway National Bank, 25 Tenn. App. 405, 158 S. W. (2d) 361, the company's agent, an inspector, had authority to issue drafts on the company to pay for cordwood. He issued drafts to named payees, who had furnished no wood, forged their endorsements, and deposited some of the drafts in his account with another bank, and cashed some of them. It was held that the depositing bank had no notice of his fraud.

■ It is generally held that where an agent draws checks on his principal's bank account, payable to himself, and deposits them to his own account, the mere form of the transaction, in the absence of additional circumstances, is not sufficient to put the depositing bank on notice of the agent's fraud. Corporation Agencies v. Home Bank of Canada, [1927] A. C., 318; Empire Trust Company v. Cahan, 274 U. S. 473, 47 S. Ct. 661, 71 L. Ed. 1158, 57 A. L. R. 921. See numerous cases in the annotations, 57 A. L. R. 925; 64 A. L. R. 1404; 106 A. L. R. 836; 115 A. L. R. 648.

■ In the case before us, the agent had unlimited authority to issue checks for corporate purposes, and, so far as appeared to complainant, he had authority, if not actual, at least apparent, to issue the checks which he deposited or cashed at complainant's banking house. Considering the agent's authority and the course of conduct of defendant, complainant was justified in believing that the checks in controversy had been drawn by King in payment for his salary, bonuses, or other sums due him by defendant. Corporation Agencies v. Home Bank of Canada, supra; Litchfield Shuttle Company v. Cumberland Valley National Bank, supra; Tennessee Products Corporation v. Broadway National Bank, supra.

■ Moreover, we think defendant is precluded from disputing King's authority to issue the checks, under the circumstances here appearing. Defendant allowed him to go on issuing and negotiating these checks for some two years and allowed its bank to go on paying them. During this period Grissim never looked at defendant's bank statements, any one of which would have shown what King was doing. In view of these circumstances, we think defendant cannot set up his want of authority. Litchfield Shuttle Company v. Cumberland Valley National Bank, supra; Empire Trust Company v. Cahan, supra; United States Guarantee Company v. Hamilton National Bank, 189 Tenn. 143, 149, 150, 223 S. W. (2d) 519.

■ Defendant being precluded from setting up the agent's want of authority to issue and negotiate these checks, it follows that complainant became a holder in due course of the two checks sued on, under section 52, N. I. L., Code sec. 7376, and is therefore entitled to recover thereon, to the extent of the loss it sustained by defendant's stopping payment of such checks.

Mr. Grissim undertook to excuse defendant's failure to have its books audited and its failure to examine its bank statements, regularly sent to it each month, by saying that he relied on his lawyer, Mr. W. M. Fuqua, since deceased. In our opinion, this could be no excuse. Mr. Fuqua was merely his legal advisor and assisted him once a year in making income tax returns. Neither defendant nor Mr. Grissom could close their eyes to what was going on; and both were guilty of culpable negligence in failing to look at the bank statements, any one of which would have revealed King's misappropriations. United States Guarantee Company v. Hamilton National Bank,

supra; Manheim Dairy Company v. Little Farms National Bank, Sup., 54 N. Y. S. (2d) 345, 365.

For these reasons, appellant's assignments of error are overruled, the decree of the Chancery Court is affirmed, a decree will be entered here sustaining the bill, dismissing the cross-bill, and awarding complainant a recovery against defendant and the surety on its appeal bond for $3,833.46, with interest since the date of the decree below, together with the costs of the appeal.

Hickerson and Shriver, JJ., concur.