Charles E. ADAMS, Lela M. Adams
and T.R.W., Inc.,
Plaintiffs-Appellees,

v.

DUNCAN TRANSFER & STORAGE OF MORRISTOWN and Robert S. Duncan and Marilyn M. Duncan, Defendants,

and

North American Van Lines,
Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

May 16, 1988.

Permission to Appeal Denied by
Supreme Court Aug. 22, 1988.

D. Robert Black, Jr., Stewart, Estes & Donnell, Nashville, for defendant-appellant.

Harry P. Ogden, Egerton, McAfee, Armistead & Davis, P.C., Knoxville, for plaintiffs-appellees, Adams.

## OPINION

FRANKS, Judge.

North American Van Lines appeals from a $56,000.00 judgment entered by the chancellor for loss and damage to household goods and other items of personalty owned by the plaintiffs while stored with Duncan Transfer & Storage of Morristown. North American urges reversal of the chancellor's determination that North American's actions had established an "apparent" agency relationship between North American and Duncan or the judgment should be reduced in amount.

The Adams, who resided in Rogersville, upon learning Charles would be required to work in England for a period of months, decided to store most of their furniture and move to England. Lela Adams assumed the responsibility for arranging the move and storage and, due to her previous experience with North American, she was attracted to an advertisement in the yellow pages of her local telephone directory. The largest advertisement emblazoned North American's logo and read:

Agent—
North American [in bold print]
Van Lines

Expert packing free estimates local and worldwide moving Storage complete door-to-door service special equipment experienced people

Ask about our You Load–We Drive program

We move the treasures of your world.
Duncan Transfer and Storage Co.

This was followed by two phone numbers and an address. The advertisement concluded with the depiction of a van with North American Van Lines inscribed on the trailer.

The chancellor's analyses of the Adams' transaction with Duncan are essentially correct and we adopt:

Because of North American's reputation and her previous experiences with North American, the plaintiff Mrs. Adams contacted Duncan and advised him that she had certain goods she wished shipped to England and other goods she wished stored. Duncan assured Mrs. Adams that he was competent and experienced in international shipping and had safe and suitable storage facilities. He indicated that his storage facilities were under his direct supervision and control. Based upon the Yellow Page advertisement, Mrs. Adams assumed that Duncan was the agent for North American not only for the shipping aspect of this transaction, but also the storage aspect. However, unknown to Mrs. Adams, Duncan was not the agent of North American for intrastate shipping or long-term storage. Duncan's agency was limited to interstate shipping.

Believing that Duncan was the agent of North American for both the shipping aspect and the storage aspect of what she needed to have accomplished, Mrs. Adams retained Duncan to arrange for the shipping of certain of her goods to England and the storage of the remainder in Duncan's facilities in Hamblen County. Duncan dispatched moving vans to the plaintiff's residence in Hawkins County, all of which bore the familiar North American Van Lines insignia. An itemized inventory was prepared,

both for the goods to be shipped and the goods to be stored, and all the goods thereafter were placed in the custody of Duncan. The goods shipped to England arrived without significant incident. However, with regard to the stored goods, and contrary to Duncan's representations to Mrs. Adams, Duncan stored the goods in a "mini-warehouse" some distance from Duncan's business situs and well out of sight. Further, this mini-warehouse or storage facility was not owned by Duncan nor under Duncan's control and supervision.

In approximately August, 1985, or one year after the goods were thus placed in storage, it was discovered that the storage facility had been broken into, a great quantity of the plaintiffs' property stolen, and that which was left was extensively damaged.

Duncan did not discuss with plaintiffs any limitations on his agency with North American; however, he presented plaintiffs two documents for execution, one covering the move to England headed by "North American International" and the other for storage "Duncan Transfer and Storage". The itemized inventory of plaintiffs' property prepared by Duncan was placed on pages with the heading "Household Goods Descriptive Inventory. Contractor or carrier North American Van Lines, Incorporated." Also the identifying labels placed on the individual items of personalty, in addition to control numbers, bore the inscription "North American Van Lines" plus its logo.

Early cases recognized an agency may arise from acts and appearances and the principal and agent as to third parties will be estopped to deny a relationship has been created. *North–South Freightways, Inc. v. Slaten,* 28 Tenn.App. 75, 186 S.W.2d 336 (1944); *Ross v. Gossett,* 2 Tenn.App. 233 (1926). The oft-quoted statement of the rule of "apparent or ostensible authority" recently quoted with approval by the Supreme Court in *V.L. Nicholson Co. v. Transcon Inv.* 595 S.W.2d 474 (Tenn.1980), is from *Southern Ry. Co. v. Pickle,* 138 Tenn. 238, 245–6, 197 S.W. 675, 677 (1917):

Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. Ostensible authority is such authority as a principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess, ... Ostensible authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency.

■ The evidence does not preponderate against the chancellor's determination that North American's conduct falls within the quoted rule. North American, under its agency agreement, had the authority to review and "to approve or disapprove advertising that used the North American name" by its agent. Use of North American's name and logo was negligently if not freely given to Duncan. North American's representative, in his testimony, conceded that the inventory form utilized by Duncan was one "that could be used inappropriately by an agent; and in this case it was." The chancellor correctly determined North American was negligent in allowing the advertisement to be placed in the yellow pages and we agree with his assessment that "even the most prudent and cynical reader of this advertisement would reasonably conclude that Duncan was the agent of North American, not only for expert packing, etc., but also for storage." North American created the appearance that Duncan was conducting himself as its agent for moving as well as storage and under the stated rule North American was bound as effectively as if actual authority existed. *Rural Educational Assn. v. Bush,* 42 Tenn.App. 34, 298 S.W.2d 761 (1956).

North American argues yet another reason exists to deny recovery, *i.e.,* the chancellor predicated liability on Duncan's negligent or tortious conduct and assuming, *ar-*

*guendo,* an apparent agency relationship, a principal is not liable for the negligent acts of an apparent agent.

■ It is a familiar rule that a principal is liable for the tortious acts of his agent occurring within the course and scope of the agent's employment or authority. *Howard v. Haven,* 198 Tenn. 572, 281 S.W.2d 480 (1955). While, as North American urges, Duncan was acting outside the scope of his authority in the storage transaction, as previously noted, he was acting with apparent authority and North American is, therefore, estopped to assert lack of actual authority. *Nashville Trust Co. v. Southern Buyers, Inc.,* 40 Tenn.App. 11, 288 S.W.2d 469 (1956).

■ North American further claims the chancellor employed the incorrect measure of damages or, in the alternative, the contract of storage limited the liability for loss to $42,000.00. The award of damages was based upon loss or damage to household furnishings, appliances, personal effects and damage to an automobile. This court, in referring to the measure of damages in cases of this nature, said in *Crook v. Mid–South Transfer & Storage Company, Inc.,* 499 S.W.2d 255, 260 (1973):

> Where, as here, the articles lost were household goods, furniture, wearing apparel, and other articles which had been acquired by the plaintiff over the years the value of such articles is not to be estimated by what each item would bring if sold in the market, but by the more elastic standard of "value to the owner". [Citations omitted.]

*Accord: Merritt v. Nationwide Warehouse Co., Ltd.,* 605 S.W.2d 250 (Tenn.App. 1980).

Lela Adams' testimony is the only evidence on the value of the personalty, and an owner is not required to prove, but is presumed to know, the value of owned property. *Johnson v. Stone,* 30 Tenn. 419 (1850); *Pruitt v. Williams,* 21 Tenn.App. 171, 106 S.W.2d 892 (1937). However, in the instant case, Lela testified to having spent a substantial amount of time in checking prices, making comparisons and researching values of damaged and missing property. She compiled a list of the missing articles and placed a value by each article which was admitted into evidence. She testified without objection thusly:

Q. Okay. And does this entire list ... these however many pages it is, eight or ten pages ... is that a true and accurate list and a true and accurate estimate on your part as to the value of these items?

A. Yes.

While the opinion of value is couched in terms of an estimate, "[t]hat is no reason for rejecting it. The law aims at actual compensation, but it recognizes that ... [it] must often be estimated or approximated." *Clift v. Fulton Fire Ins. Co.,* 44 Tenn.App. 483, 490, 315 S.W.2d 9 (1958). The evidence does not preponderate against the amount of damages awarded by the trial judge. T.R.A.P., Rule 13(d).

■ Finally, North American relies on a statement in the storage contract: "Insurance: The shipper declares the actual cash value of this shipment to be _____" and $42,000.00 was written in the blank space. Plaintiffs testified the amount was for insurance purposes in addition to the insurance ordinarily furnished by Duncan. Duncan's testimony did not clearly refute this contention and the chancellor held the provision did not contractually limit the defendants' liability because there was "no meeting of the minds." While the liability of a bailee may be limited by contract, we agree with the chancellor the evidence does not establish a contract limiting liability. *Crook.*

The judgment of the chancery court is affirmed and the cause remanded with the costs incident to appeal assessed to the appellant.

SANDERS, P.J. (E.S.), and ANDERSON, J., concur.