New York Life Ins. Co. *v.* Bank of Commerce & Trust Co.

(*Nashville,* December Term, 1937.)

Opinion filed Dec. 18, 1937.

MARION G. EVANS and JOHN B. SNOWDEN, II, both of Memphis, for appellant Bank of Commerce & Trust Co.

METCALF, METCALF & APPERSON, of Memphis, for appellee New York Life Ins. Co.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

A certain mortgage held by the insurance company

on real estate in Memphis having been foreclosed and the property bought in by the insurance company for its debt, a sale was negotiated for the insurance company to a Mrs. Taylor and other parties, by the Turley Mortgage Company, an agency which had represented the insurance company in Memphis for some sixteen years, and had made the above mortgage loan originally. The total consideration approved by the insurance company was $12,500, of which $2,064.40 was to be the cash payment; lien notes being executed for deferred payments. Certain commission charges in connection with the sale had been incurred in the sum of $454.50, which it was necessary to discharge to a third party in closing the sale.

The insurance company, from its home office in New York, approved the transaction, and by letter dated March 31, 1932, advised Turley to close the sale, and in this letter called Turley's attention to certain printed instructions in which this paragraph appeared: "Unless otherwise instructed in the accompanying letter, you should collect from the purchaser in New York Exchange to the order of this Company the money to be paid according to the contract when deed is delivered. It should be immediately remitted to this Company."

However, in the same letter this was said:

"Insofar as you are able please conduct this closing in accordance with the instructions contained in this memorandum."

On April 6, 1932, Turley wrote the New York Life Insurance Company touching the transaction and explained that it would be necessary to pay out of the cash payment the commissions due a Mr. O'Sullivan,

and, referring to the general instruction to collect and remit the cash payment in New York Exchange, he said:

"I presume, therefore, that I am to pay out of the cash payment Mr. O'Sullivan's commission, which will amount to approximately $450.00. . . . If your understanding is not in accordance with mine, please advise me at once. . . ."

On April 12th the New York Life answered:

"Your presumption that you are to pay Mr. O'Sullivan's commission out of the cash received in the amount of approximately $450.00 is correct. . . ."

Now in making the cash payment the purchaser, Mrs. Taylor, acting for herself and associates, on her own initiative, made the cash payment by a check delivered by her to Turley Mortgage Company, which, as above shown, was acting for the vendor, the insurance company. This check was payable to the order of "Turley Mortgage Company, Agents," and bore a notation on the face of it: "Payment on 1874 Jackson, Memphis, Tenn." It was indorsed on the back with a stamp, as follows, "Only pay to the order of Bank of Commerce & Trust Company, Memphis, Tenn., Turley Mortgage Company, Inc.," and the perforations show that it was paid on the date it was drawn, April 5, 1932. The word "Agents" was omitted from the indorsement.

Turley Mortgage Company, having been authorized by the insurance company to deduct and disburse from this collection the sum of $454.50 before remitting to the insurance company, deposited this check to its regular checking account in the Bank of Commerce & Trust Company and therefrom withdrew on the following day and paid the said sum of $454.50. However, the Turley Mortgage Company failed to remit to the insurance com-

pany the balance, $1,609.90. On the 14th of July following, something more than three months later, Turley died, and it was found that not only was he insolvent and his company likewise, but that he had been guilty of many irregularities and defalcations in connection with this and other agencies, involving very large figures.

When advised that Mrs. Taylor had delivered her check to Turley Mortgage Company for the cash payment of $2,064.40, recognizing his agency and apparently his right to collect from her the money, the insurance company credited her on her purchase of the real estate with this cash payment, but, learning later that the check had been made payable to Turley Mortgage Company, agents, as above shown, and had been deposited in the Bank of Commerce & Trust Company by the Turley Company, the insurance company brought this suit to recover the aforesaid balance of $1,609.90, which its agent had failed to remit, after making the collection from Mrs. Taylor, on the theory that the affix, "Agents," after the name of the payee of the check, Turley Mortgage Company, put the bank on notice that trust funds were involved and that this notice served to charge the bank with responsibility for the proper application of the proceeds of the check.

The chancellor denied recovery against the bank and dismissed the bill. The Court of Appeals reversed, and this court has granted *certiorari* and heard argument.

There is much in the record, the briefs of counsel and the opinions of the chancellor and Court of Appeals touching the relations, over long years, of the insurance company and the Turley Company, as throwing light on the extent of the powers conferred by the insurance

company on its Memphis agent, Turley individually, or one or the other of two corporations, operated by him. In the view taken by this court, this is not a determinative issue in the case. It sufficiently appears, whatever may have been the extent of his general authority, that Turley was empowered by the insurance company to act for it in the closing up of the sale to Mrs. Taylor and associates, and the excerpts from correspondence above set forth clearly show that he was authorized to collect from the purchasers the cash payment expected to be made, and which was made, and, before remitting to the insurance company, to deduct and disburse therefrom the commissions above mentioned.

Counsel for the insurance company argue, a view adopted by the learned Court of Appeals, that this case is ruled by our holding of a bank's liability in *United States Fidelity & Guaranty Co.* v. *People's Bank,* 127 Tenn., 720, 157 S. W., 414, and other cases cited, wherein it is held, in enforcement of the rule in this jurisdiction stated by MR. JUSTICE McKINNEY in *Marion Trust & Banking Co.* v. *Roberson,* 151 Tenn., 108, 268 S. W., 118, 119, that, "whenever a trustee places trust funds to his individual credit, or uses them for his personal benefit, he is guilty of a conversion;" that when a note or check is payable on its face to one as trustee, guardian, or administrator the bank which accepts the paper for deposit, or purchase, is chargeable with notice that a conversion is being made by the payee or holder.

It is proper just here to note that, in jurisdictions in which the Uniform Fiduciaries Act, 9 Uniform Laws Annotated, 147, is in force, and in many other jurisdictions, federal and state, the bank is not held liable unless it benefited from or participated in a diversion of the fund

to other than fiduciary purposes. See Paton's Digest (1926), section 1308a, page 1427, and particularly the opinion of Parker, Circuit Judge, in *Bank of Vass* v. *Arkenburgh et al.* (C. C. A. 4, 1932), 55 F. (2d), 130, wherein the question is fully discussed and numerous authorities cited.

While Tennessee is committed to the rule of liability above stated, it should be noted, however, that, in all our cases which follow this rule fastening liability on the depositing bank for trust fund deposits, the checks were for guardian, administrator, or other trust funds, as to which investment and handling are regulated by statutes and court decrees, of which banks and others must be presumed to have knowledge, while we have here a case of a business agency merely, in which class of cases the rights and relationships, powers and authorities are fixed ordinarily by private contract, express or implied, to be construed in accordance with the law of agency and controlling customs. The facts of each case are peculiar to it and must, therefore, be looked to in determining whether or not the agent was guilty of a conversion in taking into his keeping and control the funds of his principal.

Now this court has never extended this rule of notice of a purpose to convert funds evidenced by a check or note beyond the class of instruments above mentioned, in which it appeared on the face thereof that the transaction involved trust funds, and we are not willing to do so now. The leading case of *United States Fidelity Co.* v. *People's Bank,* 127 Tenn., 720, 157 S. W., 414, was a flagrant case of misappropriation of guardianship funds. The check was payable to H. L. Turner and two wards, and was indorsed by H. L. Turner as guardian and

placed to his individual credit and the fund converted to his own use.

In *Ford* v. *Brown & Co.*, 114 Tenn., 467, 88 S. W., 1036, 1038, 1 L. R. A. (N. S.), 188, two certificates of deposit were involved, dealt with together, one of which read, "C. N. Woodworth, Trustee," and the other, "C. N. Woodworth, Trustee for Betty Ford." The opinion cites holdings from other states and also our older case of *Bank* v. *Looney,* 99 Tenn., 278, 42 S. W., 149, 38 L. R. A., 837, 63 Am. St. Rep., 830, as supporting the rule that, "in a controversy between a beneficiary of a trust fund and the holder of a paper disposed of by a trustee in violation of his trust, the word 'trustee,' appearing upon the face of the paper, is sufficient to put any taker upon notice."

In *Freeman* v. *Citizens' Nat. Bank,* 167 Tenn., 399, at page 410, 70 S. W. (2d), 25, 29, "the bank received the bond company's 'guardianship check' " and was held liable. In our most recent case, *Barry* v. *Hensley,* 170 Tenn., 598, 98 S. W. (2d) 102, 103, a check was involved payable to "R. M. Barry, administrator of the estate of William J. Jones," and the bank was charged with notice of the trust, and held liable when it permitted the check to be deposited to Barry's individual account and the fund dissipated by him.

In *Central Bank & Trust Co.* v. *Cohn,* 150 Tenn., 375, 264 S. W., 641, the court said that the word "trustee" gave notice of the existence of a trust, and that the party taking the paper was charged with the duty of ascertaining what restrictions, if any, were imposed on the trustee. The opinion cited *Ford* v. *Brown & Co., supra,* and our older decisions of *Alexander* v. *Alderson,* 66 Tenn. (7 Baxt.), 403; *Covington* v. *Anderson,* 84 Tenn.

234

(16 Lea), 310, and *Caulkins* v. *Gas-Light Co.*, 85 Tenn., 683, 684, 4 S. W., 287, 4 Am. St. Rep., 786, as sustaining the principle.

It is a matter. of general knowledge that collections are commonly made by agencies, including lawyers and banks, daily and in great number and amount, by checks made to such agents, payable to them as such, or bearing notations which carry notice on their face that they are in payment of obligations due to principals represented by such agents. Quite commonly, indeed customarily, in order to make deductions therefrom of fees and charges, such checks are passed to the banking accounts of such agents. It has never been assumed that, if the party named in such a check is in fact the agent of the principal for the purpose of making the collection, and deposits it to his or its firm, corporate, or individual account, that the bank is liable for its proper distribution or remittance, in the absence of a showing of actual notice to the bank of a purpose to divert and misappropriate the funds.

To constitute a conversion under the general rule and our own cases there must be an unauthorized taking over and into possession by one of the goods or funds of another, with intent at the time to appropriate the property to his own use. In *Jordan* v. *Greer,* 37 Tenn. (5 Sneed), 165, the essentiality of intent is stressed; and it is recognized that these questions of intent in the taking and of authority, express or implied, and of assent, sanction, or waiver, are questions of fact for the jury, or for the court.

The taking must be "without the consent or approbation, either expressed or implied, of the owner;" and pertinent "questions in such cases are, whether the

acts amounting to a conversion were assented to, or sanctioned before, or at the time they transpired, or afterwards waived." *Scruggs* v. *Davis*, 37 Tenn. (5 Sneed), 261. A bank would ordinarily have little notice, or information, of the commonly confidential arrangement between an agent and his principal, so as to enable it to determine the extent or limits of the authority conferred, and whether or not conduct of the agent had the sanction or approbation of the principal.

There is no claim made that the bank in the instant case had any actual notice of any restrictions upon the authority of the Turley Company in the handling of this check, or of any purpose to convert any part of the funds to its own use. Nor is it suggested that the bank was the beneficiary in any degree of the conversion. The case for the insurance company is rested alone on the theory of notice to the bank from the addition of the word "agent" following the payee's name. Plausible argument is made that the facts of this case show actual authority in Turley to collect this particular check, either in cash or by deposit, as was done, but, in view of what has been already said, we find it unnecessary to pass on these facts.

■ ■ Without relaxation of the rule heretofore enforced in this state for the protection of beneficiaries, frequently minors and others not in position to protect themselves, charging depository banks with notice carrying liability for misuse of trust funds whenever a note or check is accepted by the bank which shows on its face that the funds of guardians, administrators, or other trustees are involved, the depository bank will not be held to know of the terms, or limitations, if any, placed by voluntary agreements between parties on chosen

"agents" or "attorneys;" a classification in which the instant case falls. The rule of notice and consequent liability of bank depositories will not be extended to these personally selected and privately formed business agency relationships, beyond requiring indorsement by the true party named, unless the bank has otherwise actual notice of a fraudulent purpose, or a want of authority on the part of the payee, or participates in the misappropriation.

It results that the decree of the Court of Appeals is reversed, and that of the chancellor dismissing the bill affirmed.