MONEYPENNY *et al. v.* THIRD NAT. BANK.

*(Nashville,* December Term, 1937.)

Opinion filed Dec. 18, 1937.

E. J. WALSH, of Nashville, for appellant Third National Bank.

E. L. McNEILLY and HARRY G. NICHOL, both of Nashville, for appellee Moneypenny.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainants, Moneypenny, Jones, and Bryant, members of the Order of Railroad Telegraphers, an unincor-

porated association, with headquarters at St. Louis, and of division No. 58 of this Order, brought this suit on their individual behalf and for the benefit of the Order, seeking to recover from the defendant bank, located at Nashville, the amount of five certain checks. Division 58 carried an account in defendant bank designated as ''Order of Railroad Telegraphers, Div'n. No. 58, H. Moneypenny G. S. & T.'' A. W. Davis was general chairman of this division, with broad powers. It was charged that Davis had misappropriated the proceeds of the checks; that although so drawn as to carry notice on the face that they represented funds of the Order, the bank passed the proceeds to the individual account of Davis and permitted him to withdraw the funds for his own use.

The issues of fact were submitted to a jury. At the conclusion of the testimony the chancellor took the case as to one of the checks, for $975, from the jury and dismissed the bill as to this check; the jury found the issues as to the other four checks, in favor of the bank, and the chancellor on this finding dismissed as to these also. The jury found: (1) That Davis had authority and consent of the Order to demand and receive the proceeds of the two checks sued on for $500 dated November 21, 1932, and $375, dated July 24, 1932, respectively; (2) that the Order approved and ratified his action after knowledge of the facts; (3) that the Order failed to act with reasonable promptness in repudiating his action and giving notice to the bank of disproval; (4) that Davis had authority to indorse and collect the check for $1140, dated October 5, 1933; (5) that the Order failed to repudiate this transaction with reasonable promptness, but ratified it; (6) that Davis

had authority to indorse or sign the name of H. Moneypenny to the check for $904.04, dated December 14, 1933, and collect and take possession of the proceeds; (7) and, finally, that the bank did not knowingly co-operate with Davis in appropriating to his own use any of the funds of No. 58 of the Order.

Complainants appealed, and the Court of Appeals sustained the decree of the chancellor as to the three checks for $500, $375, and $1140, on the ground that the evidence showed ratification and settlement as to the proceeds thereof, but held that there was (1) no material evidence to support the finding of the jury as to the check for $904.04, and (2) the chancellor erred in withdrawing the case as to the check for $975 from the jury, and, modifying the decree of the chancellor, sustained the bill as to these two items and rendered judgment accordingly. Petition of the bank has been granted and the cause argued. It is therefore necessary for this court to consider the case only as it relates to these two checks for $904.04 and $975.

■ It appears that the check for $904.04 was in the following words and figures:

"The Order of Railroad Telegraphers

"St. Louis, Dec. 14, 1933. No. 27612.

"Pay to the Order of H. Moneypenny, G. S. & T. Divn. 58 $904.04.

"904 Dols. & 4 Cts.

"The Order of Railroad Telegraphers,

"L. J. Ross,

"Grand Secretary and Treasurer.

"Acct. of

"To The Telegraphers National Bank of St. Louis.

"(Endorsement) H. Moneypenny, G. S. & T. Divn. 58.

"A. W. Davis, General Chairman, O. R. T.

"Ariosto W. Davis."

The indorsements, including the name of Money-penny, were made by Davis, and the proceeds passed to his personal account.

While, as before stated, Davis had broad powers as general chairman of Division 58 in the handling of its affairs, we are constrained to agree with the Court of Appeals that he had neither actual nor apparent authority to indorse the name of Moneypenny on a check thus made payable. There is no proof that Moneypenny had authorized this, but directly to the contrary. Nor is there any evidence that this had ever been done before. This check not only carried quite evident notice that the funds were association funds, but that it was to be paid to Moneypenny as treasurer only. It was quite apparently not a collection from outside sources, which it does appear Davis, in his capacity of general chairman, sometimes made with apparent authority, but it was drawn on the funds of the Order by its grand secretary and treasurer, and carried definite notice that it was a transfer or like payment to the treasury of Division No. 58. In view of the commanding position of Davis and his previous good record in his dealings with it, the bank apparently took the chances of ratification or approval by the drawer and the drawee. Both repudiating the indorsement and conversion by Davis to his own use by his deposit to his personal account, the loss must fall on the bank, and so much of the decree of the Court of Appeals is affirmed.

The facts with respect to the second check transaction are essentially different. That check was in words and figures as follows:

"New York, June 22nd, 1934.
"Irving Trust Company
"Wall Street Office
"One Wall Street, New York.
"Pay to the order of A. W. Davis, General Chairman
$975.00.   Nine Hundred Seventy Five 00/100 Dollars.
"J. F. Wessel.
"(Endorsement) A. W. Davis, General Chairman.
"Ariosto W. Davis."

This check was payable to A. W. Davis, "General Chairman," and properly so indorsed, drawn by an outside party in payment of a collection which Davis had full authority to make.   The bank had notice that checks intended for Davis' personal use, such as for his services, were commonly drawn in this form, with the descriptive term, "General-Chairman," added.   A number are in the record.   He had frequently indorsed such checks as he did this one, and had deposited them in this bank to his personal account, and always without complaint.   A presumption of right in Davis to control and direct the deposit of funds payable to him as general chairman thus arose.   Having placed Davis in a position of such general authority in the management of its affairs, and having itself affixed this title to his name on checks intended for his personal use, it would be exacting too much of the bank to require it to distinguish between checks for funds which he could properly control, or take into possession, and those intended only for association use.

In the opinion in *New York Life Insurance Co.* v. *Bank* (Shelby Equity), 172 Tenn., 226, 111 S. W. (2d), 371 today decided, this court has restricted application in this state of the rule of liability of banks for deposits to personal accounts of checks on their face so payable

as to carry notice of the interest of a third party in the proceeds to those cases in which the payee is so designated as to indicate that the funds dealt with are of a class the handling and disposition of which is commonly regulated by statutes or decrees, such as those of trustees, guardians, executors, and administrators. Our cases heretofore reported adjudging liability against deposit banks have been cases in which funds of one or the other of these special classes were involved. See *U. S. Fidelity & Guaranty Co.* v. *Bank,* 127 Tenn., 720, 157 S. W., 414; *Ford* v. *H. C. Brown & Co.,* 114 Tenn., 467, 88 S. W., 1036, 1 L. R. A. (N. S.), 188; *Freeman* v. *Bank,* 167 Tenn., 399, 70 S. W. (2d), 25; *Barry* v. *Hensley,* 170 Tenn., 598, 98 S. W. (2d), 102.

Of the limitations and restrictions upon the handling of such funds the law gives notice binding upon all. But the depository bank will not be held to know of the undisclosed terms or limitations, if any, placed by voluntary agreements between parties on chosen "agents," or "attorneys." In this latter class fall the terms president, secretary, and chairman. The harsh conversion rule of liability of depositories will not be extended to these privately selected and confidentially formed business agency relationships, beyond requiring indorsement by the true party named, unless the bank has otherwise actual notice of a fraudulent purpose, or a want of authority on the part of the payee, or participates in the misappropriation.

It results that as to this later transaction, relating to the check described for $975, the decree of the Court of Appeals is reversed. Decree will be entered here against the bank for the sum of $904.04 and interest. The costs will be paid one-third by the bank, and two-thirds by the complainants.