MILTON JACKSON, SR., for the Use and Benefit of Greater St. Matthews Baptist Church, Appellee, v. THE FIRST NATIONAL BANK OF MEMPHIS, INC., Appellant.—403 S.W.(2d) 109.

Western Section at Jackson. February 4, 1966.

Certiorari Denied by Supreme Court May 16, 1966.

546

Heiskell, Donelson, Adams, Williams & Wall, Ernest Williams, III, Memphis, for appellant.

Aspero & Aspero, Memphis, for appellee.

BEJACH, J. In this cause, the First National Bank of Memphis, Tennessee, appeals from a decree of the Chancery Court of Shelby County, Tennessee, against it and in favor of Greater St. Matthews Church in the sum of $1,188.50. The suit was brought by Milton Jackson, Sr., the senior trustee of that church, for and on behalf of the church, an unincorporated association. In this opinion, the parties will be referred to, as in the lower court, as complainant and defendant, or called respectively the Church and the Bank.

The amount decreed in favor of the Church represented the proceeds of some fifty checks, one of two signatures on each of which was forged. On August 8, 1963, the Church opened its account with the Bank, making at that time, a deposit of $975.00, to which additional amounts were from time to time added. Said account required for withdrawal purposes two signatures, same being those of Cleve Jordan, Financial Secretary and Milton Jackson, Sr., Trustee. The account also specified that statements

and canceled checks were to be mailed to Cleve Jordan, Financial Secretary. The checks involved in this lawsuit were drawn between August 12, 1963 and August 19, 1964, in all of which Cleve Jordan was named as payee. During this period of time, monthly statements were mailed to Cleve Jordan, Financial Secretary of the Church, and, except for two months when no checks had cleared, the canceled checks drawn on the account were mailed to Cleve Jordan, Financial Secretary.

In this Court, as appellant, the Bank has filed nine assignments of error. It will not be necessary to copy these assignments of error into this opinion, nor to discuss them separately. The cause is before us on a broad appeal, and these assignments of error present adequately the contentions of the defendant. The principal contention of the Bank is that the Church should not be permitted to recover because of its negligence which consisted, as is claimed by the Bank, of employment of an unfaithful agent and of failure to report promptly the forgeries claimed after the checks had been returned. Because of such negligence, it is claimed that the Church should be estopped from asserting liability against the Bank.

Some of the checks involved in this litigation were drawn and cashed prior to July 1, 1964 when the Uniform Commercial Code, enacted by the 1963 Tennessee Legislature, became effective in Tennessee, and some of the checks were drawn and cashed after that date. The provisions of the Uniform Negotiable Instruments Law, which was in effect in Tennessee prior to the effective date of the Uniform Commercial Code, controls as to those checks drawn and cashed prior to July 1, 1964 and the Uniform Commercial Code controls as to those cashed subsequent

to July 1, 1964. The provisions of these uniform laws applicable to the transactions here involved are 47-123 T.C.A., which is section 23 of the Uniform Negotiable Instruments Law, and sections 47-3-406 and 47-4-406 T.C.A., which are sections 3-406 and 4-406 of the Uniform Commercial Code. Section 47-123 T.C.A. provides:

"Forged or unauthorized signatures—Effect—When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

Sections of the Uniform Commercial Code, 47-3-406 and 47-4-406, T.C.A. are as follows:

"47-3-406. Negligence contributing to alteration or unauthorized signature.—Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

"47-4-406. Customer's duty to discover and report unauthorized signature or alteration.—(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support

of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on any item and must notify the bank promptly after the discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen (14) calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item (s).

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one (1) year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three (3) years from that time discover and

report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

(5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim.''

 Under the above quoted statutes a drawee bank which pays the check on a forged signature is deemed to have made the payment out of its own funds and not the depositor's, provided the depositor has not been guilty of negligence or fault that misled the bank. Figuers v. Fly (1916), 137 Tenn. 358, 373, 193 S.W. 117; United States Guarantee Co. v. Hamilton Nat. Bank (1949), 189 Tenn. 143, 223 S.W.(2d) 519. In such situation, the burden is upon the bank to show that the loss was due to the negligence of the depositor, rather than to its failure to exercise its legal duty. United States Guarantee Co. v. Hamilton Nat. Bank (1949), 189 Tenn. 143, 148, 223 S.W. (2d) 519.

 In the instant case, the negligence of the depositor relied on by the bank is its failure to examine the checks and report the forgery, thus preventing a repetition thereof. The fallacy of this argument is that the checks were mailed to Cleve Jordan, Financial Secretary of the Church, who was the forger. He was an unfaithful servant, and obviously his knowledge and information on the subject would not be reported by him to the Church, nor imputed to it. He had been a faithful and trusted

member of the Church and one of its officers for about twenty years, and, consequently, the Church cannot be held guilty of negligence in employing an unfaithful agent. The contention is made, however, that the church officials, other than Cleve Jordan, himself, should have called on Jordan for an accounting from time to time, and that the Church was negligent in its failure to perform this duty. The proof shows that the Church did from time to time call on Cleve Jordan for production of the checks and records of the Church, but that he made excuses, said he forgot to bring them, or made other excuses. Under these circumstances, in view of his previous good record and reputation, we cannot say that the Bank carried the burden of showing negligence on the part of the Church.

Under the Negotiable Instruments Law, no time limit establishing a reasonable period is fixed within which a depositor must examine the canceled checks returned to him, but under the provisions of the Uniform Commercial Code, such limit is fixed at fourteen days. Under the provisions of section 47-4-406, T.C.A. (section 4-406 of the Uniform Commercial Code) subsection 2(b), a depositor is precluded by failure to examine the checks within fourteen days from asserting liability against the bank on account of unauthorized signature or alteration of a check paid by the bank in good faith, but subsection (3) of the same Code section provides: ''The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank paying the item (s).''

In Farmers' and Merchants' Bank v. Bank of Rutherford (1905), 115 Tenn. 64, 88 S.W. 939, 112 Am.St. Rep. 817, the Supreme Court held that, ''It is negligence

in a drawee bank to pay a forged check drawn on it in the name of its customer, whose signature is well known to it, where the cashier does not examine the signature closely, but relies on the previous endorsements.'' It is argued on behalf of the Bank that such examination of the signature card, which admittedly was not made in the instant case, is not practical under modern banking methods. Such may be true as a practical matter, but, if so, the Bank, because of that fact, cannot escape the consequences and must, under that decision, be held guilty of negligence.

■ We think, however, that the Bank must be held to be guilty of negligence in another and much stronger aspect of the instant case. The Bank account here involved was that of a church, which obviously involved trust funds, and the counter signature of Milton Jackson, Trustee, whose signature has been forged, was required on all checks. In the case of Fidelity and Deposit Co. of Maryland v. Hamilton Nat'l Bank (1938), 23 Tenn. App. 20, 126 S.W.(2d) 359, in an opinion written by McAmis, J., now presiding judge, this Court, Eastern Section, held that one who takes paper from a trustee importing upon its face its fiduciary character, is bound to inquire of the transferor the right to dispose of it. A long list of cases is cited as authority for this proposition. Any adequate inquiry made in the instant case by the Bank would have disclosed the situation that Cleve Jordan was forging the name of Milton Jackson, Trustee, and would have prevent a repetition of such forgery.

■ There is another and a stronger reason why the Bank must be held guilty of negligence and held responsible for the result of the forgery here involved. All of the checks, recovery for which was granted in the instant case, were made payable to Cleve Jordan, personally; and

many of them bear the endorsement of the Southland Racing Company, which is the corporation operating the dog racing track in Arkansas across the Mississippi River from Memphis. These circumstances, and especially the one that the checks were made payable to Cleve Jordan, personally, should have put the bank on inquiry as to whether or not the funds represented by these checks were being withdrawn for unauthorized purposes. Any inquiry would have disclosed the true situation and prevented further depletion of the Church's bank account. The bank account being of a trust fund and the checks withdrawing same being made to one of the authorized signers of checks, was sufficient to put the Bank on notice that the funds were being improperly withdrawn, or should at least have required the bank to make inquiry as to whether or not the withdrawals involved were authorized. In Hartford Accident & Indemnity Co. v. Farmers Nat. Bank (1940), 24 Tenn.App. 699, 149 S.W.(2d) 473, this Court, Middle Section, held that the withdrawal of funds from a trust account for personal benefit of the trustee charged the bank with knowledge that the funds were being illegally withdrawn and made it liable. The funds involved in that case were back tax collections made by Dick Taylor, the Clerk and Master of the Chancery Court of Franklin County, Tennessee, and same had been deposited in the Farmers National Bank in an account labeled "Dick Taylor, Back Tax". Seven Thousand, three hundred and two dollars and forty one cents ($7,302.41) of such funds were withdrawn from this account for the personal use of Dick Taylor by one hundred and ninety-eight checks. After his death, it was found that the said Dick Taylor was short in his accounts in the sum of $7,843.14, which amount, plus 12% penalty and 15% attorneys fee, the Hartford Accident and Indemnity Com-

pany, his surety, paid, with a provision that it should be subrogated to all the rights of the State and County. In its capacity as surety, and under its subrogation agreement, the Hartford Accident and Indemnity Company brought suit against the Farmers National Bank and recovered $6,752.41. From the opinion of the Court of Appeals, Middle Section, written by Felts, J., later Mr. Justice Felts of the Supreme Court, we quote, as follows:

"A bank in which a fiduciary carries his trust account has no duty to administer the trust or supervise his administration of it, but may pay his checks regularly drawn on the account, upon the presumption that he is acting honestly and properly administering the trust, unless the circumstances are such as to put the bank upon notice that he is misappropriating or intends to misappropriate the trust funds which he seeks to withdraw. But if the bank with such notice pays the fiduciary's check and thus aids him in the accomplishment of his unlawful purpose, it participates in his breach of trust and is liable for his misappropriations. United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn. 720, 157 S.W. 414; American Surety Co. v. Grace, 151 Tenn. 575, 271 S.W. 739; New York L. Ins. Co. v. Bank of Com. & Trust Co., 172 Tenn. 226, 111 S.W.(2d) 371, 115 A.L.R. 643; Moneypenny v. Third Nat. Bank, 172 Tenn. 237, 111 S.W.(2d) 375; Fidelity & Dep. Co. of Maryland v. Hamilton Nat. Bank, 23 Tenn.App. 20, 126 S.W.(2d) 359 and cases there cited; 7 Am.Jur. secs. 521, 522, pp. 375, 376; 9 C.J.S., Banks and Banking, secs. 338, 339, pp. 680-682.

What is sufficient to put a bank upon such notice depends upon the particular facts and circumstances of **each case.**

\* \* \* \* \* \*

Under the foregoing authorities, we think the course of Taylor in regularly giving checks on this trust account, many of which were known by the bank to be for his own personal use, put upon the bank the duty to inquire and it is chargeable with what could have been ascertained if such inquiry had been properly made. The bank admits that it made no inquiry but honored all of the checks drawn by Taylor. That is to say that Taylor and the bank joined in treating this account as if it had been the personal account of Taylor. In view of these facts, in the light of the fore-going authorities, we think the learned Chancellor properly held the bank liable for participating in the breaches of trust by which Taylor's misappropriations were accomplished."

Hartford Acc. & Indem. Co. v. Farmers Nat. Bank, 24 Tenn.App. 703-704, 149 S.W.(2d) 476.

The case of Hartford Accident & Indemnity Co. v. Farmers Nat'l Bank (1940), 24 Tenn.App. 699, 149 S.W. (2d) 473, is cited in volume 10 Am.Jur.2d,—Banks,—section 525, page 501, where it said:

"It is held that where a bank knows that a fiduciary is drawing checks on the trust account for personal use, it is put upon inquiry and is liable as a participant in the misappropriation if it pays such checks without any inquiry."

For the reasons hereinabove stated, we think that all of the defendant's assignments of error must be over-ruled. The decree of the lower court, together with interest thereon, will be affirmed against the defendant First National Bank of Memphis, Inc. and its surety on the

appeal bond. The costs of the cause will also be adjudged against the Bank and its surety.

Avery, P.J. (W.S.), and Carney, J., concur.

## Concurring Opinion

CARNEY, J. I concur in that portion of the majority opinion which holds the Bank guilty of negligence in failing to make inquiry as to the legality of the withdrawals since the checks were made payable to Cleve Jordan personally and were being withdrawn from a trust account. These withdrawals became doubly suspicious when some of the checks bore endorsements of the Southland Racing Company, a corporation which operates a racing track in West Memphis, Arkansas. I concur in the result reached by the majority opinion affirming the judgment of the court below.

If the illegal checks had not been payable to the trustee personally so as to put the Bank on notice of their probable illegality then I think the Bank's liability would have been limited to the total of those checks bearing forged signatures which were included in the first group of canceled checks returned by the Bank to Cleve Jordan, Financial Secretary. The subsequent acts of Cleve Jordan in withholding these canceled checks from the other church officials should not be imputable to the Bank because the church failed to demand examination and inspection of the returned canceled checks and bank statement.