AMERICAN NAT. BANK v. MILES.—79 S. W. (2d) 47.

Middle Section. December 9, 1934.

Petition for Certiorari denied by Supreme Court, February 23, 1935.

Fyke Farmer and Bass, Berry & Sims, all of Nashville, for plaintiff in error Bank.

Edward L. Rutherford, of Nashville, for defendant in error Miles.

FAW, P. J. This suit was instituted on August 7, 1933, before a justice of the peace of Davidson county, by Stanley M. Miles (hereinafter called plaintiff) against American National Bank (hereinafter called defendant). The cause of action stated in the warrant is, "a plea of debt due by the wrongful payment of a check in the sum of $300 and charging same to the account of the plaintiff."

The justice of the peace gave judgment for the defendant and for costs of suit, and the plaintiff thereupon appealed to the circuit court of Davidson county, where the case was transferred to the Third circuit court, and in the latter court a jury heard the evidence on behalf of the parties, respectively.

At the close of the evidence, the trial judge overruled a motion on behalf of defendant for a directed verdict in its favor, and instructed the jury to return a verdict in favor of the plaintiff in the sum of $300, which was accordingly done, and the court thereupon ordered and adjudged that the plaintiff recover of the defendant the sum of $300 and all the costs of the cause, for all of which execution was awarded.

Thereafter, in due season, the court overruled a motion for a new trial on behalf of defendant; to which action of the court the defendant excepted and prayed an appeal in the nature of a writ of error to this court, which appeal was granted by the trial court and perfected by the defendant.

Through two assignments of error in this court, the defendant says that the trial court erred (1) in directing the jury to return a verdict in favor of the plaintiff, and (2) in declining and refusing to grant defendant's motion for peremptory instructions made at the end of all the proof, and in declining and refusing to direct the jury to return a verdict for the defendant. The facts of the case appear from the testimony of the plaintiff, Miles, as a witness in his own behalf, and the testimony of R. J. Akin, one of defendant's tellers, as a witness on behalf of defendant. The testimony of these witnesses was reduced to narrative form for the bill of exceptions, and will be here copied as it appears therein.

The testimony of the plaintiff, Stanley M. Miles, is as follows:

"Direct Examination. He is engaged in business as an automobile dealer and was engaged in that business in the year 1931. In the year 1931 he had and at the present time has a personal checking account in the American National Bank.

"On September 8, 1931, he issued a check for $300, payable to cash, and delivered it to A. A. Stanton who runs a gambling house in the County of Cheatham and outside of Davidson County, known as Ridgeway Inn. Said check is made Exhibit 1 to his testimony.

"(By agreement of the parties, said original check, which is marked Exhibit No. 1 to the testimony of Stanley M. Miles and

identified by the signature of the Judge, is to be attached to the transcript and made a part of the record.)

"He signed his name to this check as 'S. M. Miles.' At the time his checking account with the defendant, American National Bank, was opened he was required to sign a signature card, and he signed that card 'Stanley M. Miles.'

"He did not recall having given any check on this account signed S. M. Miles prior to the time this check was given but all of his checks on that account were signed Stanley M. Miles.

"He was out at the Ridgeway Inn on the night this check was given, gambling. The dice were crooked. He gave this check to Stanton in settlement of this gambling debt. He gave him the check and told him not to cash it, and walked out. Stanton came down to see him the next day and Miles told him then that the dice were crooked, and told him that he did not intend to pay the check, and that the bank would not cash the check anyway. Stanton said he would not blame him for not paying it if the dice had been crooked.

"Miles didn't have enough money in his account to pay the check until October 22, 1931, when he made a deposit of $300, which was credited to his account. The check was paid by the bank on the day he made that deposit.

"He knew at the time he gave the check that he had signed the signature card at the bank 'Stanley M. Miles.'

"Subsequent to this transaction he drew another check on his account, payable to W. White McClanahan and Rayburn Rose, Agents, Auctioneers and owners, signed 'S. M. Miles,' and made this check Exhibit No. 2 to his testimony.

"(By agreement of the parties, said original check, which is marked Exhibit No. 2 to the testimony of Stanley M. Miles and identified by the signature of the Judge, is to be attached to the transcript and made a part of the record.)

"Miles bought a lot at an auction sale in Inglewood, and gave this check as part payment on it. He didn't have any blank checks and they asked him to sign this check. He signed this one S. M. Miles, like he did the other one. This check was returned unpaid.

"(The defendant objected to the introduction of this check in evidence upon the ground that it was subsequent to the date of the check involved in this suit and was irrelevant and immaterial to any of the issues of the suit. This objection was overruled by the court, and defendant excepted.)

"There was a slip attached to this check when it was returned, showing it was not paid because the signature did not agree with the signature on file.

"Prior to the time of his giving the check on which this lawsuit was based he had given Stanton other checks for losses sustained at

Ridgeway Inn, drawn on his account in the American National Bank, all of which had been paid. These checks he signed Stanley M. Miles.

"Cross Examination. Plaintiff admitted on cross examination that this check was outstanding from September 8, 1931, the date it was issued to Stanton, until the date it was paid—October 22, 1931. He said he signed the check S. M. Miles because he didn't want to have an argument in the gambling house and when he gave the check to Stanton he told him to come by the garage and see him before cashing the check. He said that Stanton came down the next day but did not surrender the check to him. He testified that he had no idea of paying the check but he did not tell the bank that. He said he did not think it was worth while to tell the bank that he did not intend for the check to be paid, because he did not think the bank would cash it, since it was not properly signed.

"He said that he did not intend for the bank to pay the second check signed S. M. Miles, but signed it just to see if it would be paid by the bank. He did not tell the bank not to pay it. The check was given after the trial of this case in the magistrate's court. The check was not dated at the time it was given. When the check was returned by American National Bank unpaid he paid the amount of the check to the Commerce Union Bank, where it had been deposited by the holder, and took it up by issuing another check on his account in the American National Bank signed Stanley M. Miles. He said he was just experimenting with the second check to see if the American National Bank would pay it.

"He said he talked with Stanton about the check involved in this case several times after it was given and before it was paid and knew that the check was outstanding all the time, but did not stop payment on the check at the American National Bank nor otherwise notify it that he did not intend for the check to be paid.

"Redirect Examination. The plaintiff was asked what Stanton said he was going to do with the check, but the defendant objected and this objection was sustained by the court, and the plaintiff excepted.

"At the request of the plaintiff's attorneys the defendant's attorneys produced the signature card signed Stanley M. Miles, and same was made Exhibit No. 3 to his testimony.

"(By agreement of the parties, a photostatic copy of said signature card marked Exhibit No. 3 to the testimony of plaintiff, Stanley M. Miles, and identified by the signature of the Judge, is to be attached to the transcript and sent up as a part of the record on appeal in the original form.)"

The testimony of defendant's witness R. J. Akin is as follows:

"Direct Examination. Said Akin testified that he is a teller at the American National Bank at the present time and was a teller in

the year 1931. He remembered cashing the check in question and remembered that it was presented by A. A. Stanton. He did not know what the check was given for. He did not know that it was given for a gambling transaction. The check was presented at the window and paid in the regular course of business. At the time he paid the check he did not notice that it was signed S. M. Miles instead of Stanley M. Miles. He had known the plaintiff for some time and recognized the plaintiff's signature on the check. The plaintiff had another account in the name of the Miles Motor Company, checks on which were drawn in the name of Miles Motor Company by S. M. Miles.

"When he paid the check he assumed that the plaintiff drew the check and intended for it to be paid and charged to his account.

"Cross Examination. He testified that he did not know at the time the check was paid that the plaintiff's account was opened in the name of Stanley M. Miles. The bank kept the signature cards on file and he had access to them.

"Before cashing the check he sent it up to the bookkeeping department to find out if the balance in the account was sufficient to pay it.

"He testified that the reason the second check, payable to McClanahan & Rose, was not paid by the Bank was that it was presented after plaintiff had raised the question about the payment of the check involved in this case.

"When the second check was returned the American National Bank attached to it a slip showing that it was not paid because the signature did not correspond with the signature on file.

"Redirect Examination. He testified that he cashed an average of 200 to 250 or perhaps 300 checks a day. He said that he did not look at the signature cards every time, but only looked at them if he had any doubt as to the genuineness of the signature of the check presented. He said he knew Mr. Miles' handwriting and did not have to resort to the signature card. He said that this check was presented several times before it was cashed.

"Recross Examination. He testified that the signature cards for customers whose names began with the letters L, M, and N were kept in his window in a file. Other tellers had the signature cards of customers whose names commenced with the other letters of the alphabet.

"Redirect Examination. He said there was no rule that tellers could only cash checks on accounts the signature cards of which were kept in their windows. For example, there was no rule that prevented him from cashing any other checks although he only kept the signature cards for the L, M, and N accounts."

As we understand the briefs, it is the view of counsel for both

parties that the evidence is undisputed and that there was no issue of fact for the jury to determine; and in this view we concur.

■ It was proper for the trial judge to dispose of the respective motions of the parties for peremptory instructions separately, as he did (Virginia-Tennessee Hardware Co. v. Hodges, 126 Tenn., 370, 149 S. W., 1056; King v. Cox, 126 Tenn., 553, 151 S. W., 58), and the ultimate question for decision here is whether, upon the undisputed evidence, the plaintiff or the defendant is entitled to a favorable judgment.

There is no evidence of a contract between plaintiff and defendant that plaintiff's checks would not be paid by defendant if the signature was not in the precise form on the "signature card," viz, "Stanley M. Miles;" hence cases holding that a bank is bound by its contract to pay no checks unless signed in a specified form are not in point.

■ It is a matter of common knowledge that it is a custom of banks to require their depositors to furnish signature cards when a checking account is opened, and that the primary purpose of such signature cards is that the bank may have in its possession a specimen of the handwriting of the depositor, for the purposes of comparison when needed to determine whether a signature purporting to be that of the depositor is genuine or spurious.

■ ■ It is elementary that the relation between a bank and its general depositor is that of debtor and creditor—the debt being due on demand, and the undertaking of the bank that it will pay out the funds as ordered by the depositor.

"While a bank has a right to make repayment of a deposit without any writing in the nature of a check, order, or receipt, and incurs no liability thereby, if payment is made to a person entitled to receive it, it is entitled to demand a written order for the payment of a depositor's funds, and it is the universal custom of banks to require such an order. It follows that an oral demand for repayment is insufficient." 7 C. J., p. 673, section 382.

However, it has been held in numerous cases (from other jurisdictions) that although,. by virtue of the implied contract arising from the usage of the banking business, a bank is entitled to demand some written evidence of an order of a depositor to pay out his deposit, and is not bound to act on an oral order; it may, if it so elects, waive its right to a written order and pay out the funds on deposit on the oral order of the depositor. See annotation, 2 A. L. R., 175 et seq.

The underlying principle of the cited cases is that, if the bank has paid out the funds of the depositor as directed by him, no matter in what manner or form the order is given, the bank is no further liable to the depositor for the amount thus paid out.

■ "A depositor's right to withdraw his deposit is absolute, and the bank is bound to honor his checks and cannot refuse on the ground that he intends to make an improper use of the money." 7 C. J., p. 672, section 381.

Such, for example, as to pay a gambling debt. Armstrong v. American Exchange National Bank, 133 U. S., 433, 10 S. Ct., 450, 33 L. Ed., 747 (headnote 12); Snyder v. Corn Exchange National Bank, 221 Pa., 599, 70 A., 876, 128 Am. St. Rep., 780, 789.

■ It is true that the signature of the drawer is one of the "elements which are essential" to the validity of a check. 1 Morse on Banks (6th Ed.), section 365. And "the general rule undoubtedly is that the bank has, at its peril, to know the genuineness of the signature of its depositor." People's Bank v. Franklin Bank, 88 Tenn., 299, 301, 12 S. W., 716, 6 L. R. A., 724, 17 Am. St. Rep., 884.

■ But, in the present instance, the signature to the check in question was the genuine signature of the plaintiff, and the defendant's teller who paid the check (the witness Akin) was well acquainted with plaintiff's signature in the form in which it appeared on said check, viz., "S. M. Miles," by reason of the fact that checks of the Miles Motor Company, a business owned by plaintiff, which had a separate account at the defendant bank, were signed (by the plaintiff) "Miles Motor Company, by S. M. Miles."

Cases involving corporation checks signed (for example) by one officer of the corporation, where the rules of the corporation require that its checks should be signed by two of its officers, and the signature card furnished the bank so showed, or the bank otherwise had knowledge of this requirement, are obviously not in point in the instant case. In such cases the signature is not that of the corporation depositor, as a corporation can bind itself only through the act of an authorized officer. 7 C. J., p. 676, section 395.

For the reasons we have stated, we think the learned trial judge erred in directing a verdict for the plaintiff and that he should have directed a verdict for the defendant.

■ There is another fact disclosed by the record which, although not necessary to support the defense in this case, might preclude a recovery by plaintiff, and that is, his failure to notify the defendant to "stop payment" on the check. Plaintiff's right to "stop payment" on the check (as between himself and the bank) was clear (1 Morse on Banks [6th Ed.], 698), and there was an abundance of time in which he could have done so. If he lost $300 by having that much of his deposit applied to a gambling debt, his negligent failure to notify the defendant to withhold payment of the check was the efficient cause of such loss. Cureton v. Farmers' State Bank, 147 Ark., 312, 227 S. W., 423; Snyder v. Corn Exchange National Bank, supra; National Bank v. Bangs, 106 Mass. 441, 8 Am. Rep., 349;

448

Woods & Malone v. Old Colony Bank, 114 Ga., 683, 40 S. E., 720, 56 L. R. A., 929. The facts of the cases just cited are not parallel to the case at bar, but the principle is there announced that negligence of the depositor may bar a right which he might otherwise have had against the bank.

However, as before stated, we do not think that the plaintiff can maintain the present action, even though his negligence be disregarded.

██ There is no merit in the contention that defendant is liable in this action because it declined to honor a check drawn by plaintiff, and signed "S. M. Miles," after plaintiff had begun the present suit and it had been tried before the justice of the peace. Plaintiff admitted that, in issuing the latter check, he "was just experimenting with the second check to see if the American National Bank would pay it." It would be altogether unreasonable to expect the defendant to honor a check signed "S. M. Miles" during the pendency of an action at law in which plaintiff was seeking a judgment against defendant upon the averment that defendant was without authority to charge to plaintiff's account a check signed in that form. Plaintiff's averment in the lawsuit that defendant had no authority to charge to his account a check signed "S. M. Miles" estopped plaintiff to complain of defendant's refusal to pay a check thereafter signed in that manner.

It results that defendant's assignments of error are sustained, the judgment of the circuit court is reversed, the directed verdict for plaintiff is set aside, the defendant's motion for a directed verdict is sustained, and plaintiff's suit is dismissed, and a judgment will be entered accordingly.

The costs of the cause, including the costs of the appeal, will be adjudged against plaintiff, Miles.

Crownover and DeWitt, JJ., concur.