Jay KALEY, a minor, by next friend, John S. LANHAM and Ruth Lanham, Plaintiffs–Appellees,

v.

UNION PLANTERS NATIONAL BANK OF MEMPHIS, TENNESSEE, doing business in Chattanooga, Tennessee, Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

Dec. 30, 1988.

Rehearing Denied Jan. 27, 1989.

Application for Permission to Appeal Denied by Supreme Court May 1, 1989.

William G. Colvin and Brenda G. Siniard, Shumacker & Thompson, Chattanooga, for appellant.

Harry Berke, Berke, Berke and Berke, Chattanooga, for appellees.

## OPINION

ANDERSON, Judge.

Bank appeals the trial court action setting aside the plaintiffs' jury verdict of $1,636.80 and directing a verdict for the plaintiffs for $31,142.47. The issue is whether the Bank or the customer will be responsible for loss resulting from over one hundred forged checks drawn on the customer's account over a three-month period involving a total of $31,142.47. The trial court held the Bank was responsible for the entire loss. We reverse.

## FACTS

In December 1985, the plaintiff, Ruth Lanham, opened a Union Planters Bank checking account for $200 in the name of her grandson, Jay Kaley, aged 15, as a Christmas present. Because Kaley was a minor, the account was in Lanham's name as well. Kaley was a high school student residing with his mother, Lynda Simmons (Mrs. Lanham's daughter), at 1312 Koblan Drive in Chattanooga. Kaley's mother told him she would balance his monthly bank statement and advised him to keep a separate ledger of his deposits and withdrawals. Simmons also asked that Kaley sign some checks in blank for her use in paying certain household expenses. Simmons later cashed some of these pre-signed checks in various branches of Union Planters Bank.

Simmons had a past history of drug abuse for which she had been treated. However, because of her apparent rehabilitation, Ruth Lanham and her husband allowed Simmons to replace their bookkeeper in the Lanham Bible Book Store when their bookkeeper quit. In January 1986, Lanham brought Simmons to the Brainerd Village Branch of the Bank and introduced her to the Branch manager as her daughter. Lanham indicated that Simmons would handle the accounts of the business, also located in Brainerd Village, while the Lanhams attended a three-month conference in Boca Raton, Florida, and that the Bank should afford Simmons all of the privileges enjoyed by Lanham.

Upon returning to Chattanooga from Florida in April 1986, Ruth Lanham examined the Lanham Bible Book Store bank statement for the first time since leaving in January and noticed irregularities on the statement. Aware that her daughter had reverted to her drug habit, Lanham notified the Bank of Simmons' unauthorized activities, removed Simmons as an authorized signatory on all of the business accounts, and gave notice to the Bank of the forgeries on her joint account with Kaley as well.

Lanham and Kaley discovered that Simmons had issued unauthorized checks from the Bible Book Store accounts, laundered the funds through Kaley's account, and forged Kaley's name on his checks to withdraw the funds from Kaley's account. Kaley had signed in blank approximately thirty checks and given them to his mother ostensibly to pay bills. After using all of the pre-signed checks, Simmons obtained several unsigned checks and forged Kaley's name thereon without Kaley's knowledge. Moreover, one check in the amount of $385 had been signed by Simmons in her own name even though the check was drawn on Kaley's account. The Bank cashed the check despite the fact that Simmons had no account with the Bank, and despite the fact that Kaley and Lanham were the owners of the account named on the check. During the three-month period in question, the Bank honored over one hundred forged checks totaling $31,142.47.

Kaley and Ruth Lanham brought suit against the Bank for the amount of the loss from the forgeries in their account. Because Simmons had been authorized as a signatory on the Bible Book Store account, the Lanhams did not sue for the losses on

that account. After the plaintiffs' proof, in which only Kaley and Mrs. Lanham testified, the Bank moved for a directed verdict based on plaintiffs' failure to present proof of the Bank's lack of ordinary care. The plaintiffs also moved for a directed verdict when the Bank rested on its motion and chose not to present any evidence. The judge overruled the motions and the case went to the jury.

The jury awarded a verdict in the amount of $1,636.80 in favor of the plaintiffs. Kaley and Lanham then filed a motion for a directed verdict and/or motion for new trial. The judge overruled the motion for new trial but granted the directed verdict, awarding the plaintiffs $31,142.47 for the total loss on the forgeries. The trial judge found as a matter of law that the facts were undisputed, that both Kaley and Lanham were guilty of negligence, but that the Bank also was guilty of negligence. Because the trial court found the negligence of both parties combined and concurred together as the proximate cause of the loss, the trial judge stated that the Bank must bear that loss consistent with *Vending Chattanooga, Inc. v. American National Bank & Trust Co.*, 730 S.W.2d 624 (Tenn.1987), and Tenn.Code Ann. §§ 47–4–406, 47–3–406, and 45–2–702 [1]. The judge further found that "the ordinary and common practice in the business community, as well as banking practice, requires proper identification of the person cashing the check, or the person cashing the check must be known to the business establishment. This practice of requiring identification ... requires no expert proof." The Bank then perfected its appeal to this Court and raised the following issues:

1. Whether the trial court erred in denying Bank's motion for directed verdict at the close of plaintiffs' proof when plaintiffs failed to prove the Bank's lack of ordinary care;

2. Whether the trial court erred in setting aside the jury verdict.

## LAW

We begin with the familiar rule that between the customer and the bank, the bank must bear the loss where money has been paid as the result of a third party forging a customer's signature on a check. "No person is liable on an instrument unless his signature appears thereon." Tenn. Code Ann. § 47–3–401(1). The signature of the drawer is one of the essential elements to the validity of a check and the general rule is the bank must know the genuineness of a depositor's signature. *American National Bank v. Miles*, 18 Tenn.App. 440, 79 S.W.2d 47 (1935). An exception to this general rule is contained in Tenn.Code Ann. § 47–4–406, which in pertinent part provides:

(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries ... the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on any item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen (14) calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

---

**1. Deposit of minor.**—A bank may operate a deposit account in the name of a minor or in the name of two (2) or more persons, one (1) or more of whom are minors, with the same effect upon its liability as if such minors were of full age.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

Tenn.Code Ann. § 47–4–406(1), (2), (3) (1979).

As the Supreme Court recently commented, the purpose of the statute is

> to judge the negligence of the customer after the forgeries, and the acts of the customer in discovering the forgeries. Under TCA § 47–4–406(1) "... the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature ... and must notify the bank promptly after discovery thereof." The burden of proof is placed on the bank to prove the customer's lack of reasonable care.

*Vending Chattanooga v. American National Bank & Trust,* 730 S.W.2d 624, 627 (Tenn.1987).

The *Vending Chattanooga* Court held the rule in evaluating a customer's exercise of reasonable care under the statute is:

> "a depositor must be held chargeable with knowledge of all the facts that a reasonable and prudent examination of the returned bank statements would have disclosed had it been made by a person on the depositor's behalf who had not participated in the forgeries." J. White and R. Summers, *Uniform Commercial Code,* 2nd Edition, (1980) § 16–7, page 630.

*Id.* at 627.

Applying the above rule to the facts of the instant case, the trial court found as a matter of law that customers Lanham and Kaley violated their duty to exercise reasonable care and promptness in discovering the forgeries and were negligent as defined in the statute. The proof was undisputed that Lanham never examined any monthly bank statements until April 1986, and that Kaley never examined any bank statements after January, 1986. Had the February 19, 1986 statement been examined by either Lanham or Kaley, the first forgeries by Lynda Simmons would have been apparent.

However, the statute also provides that despite the customer's negligence, if the customer establishes lack of ordinary care on the part of the bank in paying the item, the customer may still recover.

> "[I]f both the customer and his bank are negligent, the two will usually offset one another and reopen the customer's claim on the forgery." J. White and R. Summers, *Supra,* p. 607. The burden of proof is placed on the customer to establish the negligence of the bank.

*Vending Chattanooga,* 730 S.W.2d at 628.

The *Vending Chattanooga* Court defined the bank's duty as follows:

> What then, is "ordinary care" on the part of a bank? We hold that a bank exercises ordinary care when it pays a check in good faith and in accordance with the reasonable commercial standards of the banking industry. Such a rule does not require the bank to be a handwriting expert on the signature of each check, and on the other extreme a bank would be negligent in honoring a check with no signature at all. Application of the rule between these two extremes would depend on the facts in each case and what the facts showed to be a reasonable commercial standard of the banking industry.

730 S.W.2d at 628.

The Bank argues that the trial court erred in denying its motion for directed verdict because Kaley failed to establish, through an expert witness, lack of ordinary care by the Bank in paying the items pursuant to Tenn.Code Ann. § 47–4–406 (1979). We do not agree the trial court should have directed a verdict, but do agree that evidence in some manner of the violation of reasonable commercial standards of the banking industry was required and that the plaintiffs had the burden to establish those standards. The plaintiffs offered no proof that the Bank's actions in paying the checks were not commercially reasonable or were not followed by banks in the general area. The only witnesses offered by the plaintiffs were themselves. No one was called to testify concerning the standards

of care in checking signatures or in detecting forgeries.

According to the language in the statute construed by *Vending Chattanooga*, the plaintiffs have the burden of proving the commercial reasonableness of the Bank's actions. We therefore find that the plaintiffs failed to prove lack of ordinary care by the Bank in payment of the items in question pursuant to Tenn.Code Ann. § 47–4–406.

After the proof, the trial court found that the plaintiffs were, as a matter of law, guilty of negligence after the forgeries under Tenn.Code Ann. § 47–4–406. The case was submitted to the jury to determine whether the plaintiffs were also guilty of negligence before the forgeries under Tenn.Code Ann. § 47–4–406 [2], whether the defendant Bank was guilty of negligence under Tenn.Code Ann. § 47–4–406 or otherwise, and the proximate cause, if any.

We review the trial judge's judgment notwithstanding the verdict with the same standard of review as a directed verdict, which is:

> In ruling on a motion for directed verdict, trial and appellate courts
>
> take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion.

*Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn.1977). *Accord, Gann v. International Harvester Co. of Canada, Ltd.*, 712 S.W.2d 100, 105 (Tenn.1986).

We are also mindful that:

> [I]ssues of proximate cause, intervening cause and contributory negligence are

peculiarly issues for the trier of fact, not the court, to determine. Such issues can only be decided by the court in cases where inferences from uncontroverted facts are so certain that all reasonable men, in the exercise of a free and impartial judgment, must agree upon them.

*Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn.1981).

We find the trial court was in error after the jury verdict in finding by judicial notice standards of banking practice in the absence of proof and, based on those standards, finding negligence on the part of the Bank as a matter of law.

We believe the case was properly submitted to the jury on the issues of negligence and proximate cause. Accordingly, the judgment notwithstanding the verdict for the plaintiffs is reversed and the verdict of the jury reinstated. Costs of the appeal are taxed against the Appellees.

SANDERS, P.J. (E.S.), concurs.

FRANKS, J., not participating.

**ORDER ON PETITION TO REHEAR**

Plaintiffs–Appellees' Petition to Rehear, upon due consideration, is respectfully denied.

SANDERS, P.J. (E.S), concurs.

FRANKS, J., not participating.

---

**2. Negligence contributing to alteration or unauthorized signature.**—Any person who by his negligence substantially contributes to a material alteration of the instrument or to be making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

Tenn.Code Ann. § 47–3–406 (1979).