IN THE COURT OF APPEALS

FILED

June 6, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| FIRST TENNESSEE BANK, NATIONAL ASSOCIATION, | ) | HAMILTON CHANCERY |
| | ) | C. A. NO. 03A01-9701-CH-00014 |
| Plaintiff-Appellee | ) | |
| vs. | ) | HON. R. VANN OWENS CHANCELLOR |
| JESSE O. QUILLIAN, | ) | AFFIRMED AND REMANDED |
| Defendant-Appellant | ) | |

RICHARD A. FISHER, Logan, Thompson, Miller, Bilbo, Thompson & Fisher, P.C., Cleveland, for Appellant.

THOMAS L. N. KNIGHT, Grisham, Knight & Hooper, Chattanooga, for Appellee.

O P I N I O N

McMurray, J.

This case originated as an action to collect monies due under the terms of a promissory note executed by the defendant to the plaintiff First Tennessee Bank, National Association. An answer was filed by the defendant admitting the execution of the note and that there was an outstanding balance thereon. He also filed a counterclaim in which he sought a setoff and damages for forged checks drawn on his account and paid by the bank. The trial court on motion of the plaintiff, entered a summary judgment against the defendant on the original complaint and dismissed the counterclaim A judgment in the amount of $34,399.24 was entered against the defendant. This appeal resulted. We affirm the judgment of the trial court.

The defendant challenges the propriety of the trial court's action in granting the plaintiff's motion for summary judgment. The primary thrust of the argument put forth by the defendant is that the bank was negligent by failing to exercise ordinary care and to act with commercial reasonableness in dealing with the defendant's account.

Under the undisputed facts in the case, the defendant's bookkeeper had, for a period of years (1992-1995), forged the defendant's name on a large number of checks, cashed the checks and used them for her benefit. She is now under indictment for embezzlement. The defendant admits that it was the practice of his

2

office for him to sign checks payable to cash and have the bookkeeper take them to the bank, cash them for him and give him the cash. The bookkeeper apparently forged several checks made payable to cash, cashed the checks and converted the funds to her own use. She further wrote checks to others in payment of her personal obligations.

The record further reflects that the bank had sent statements of the defendant's account, including canceled checks, to him at the proper address every month. The defendant admits receiving the statements and that he did not review the canceled checks nor reconcile his account during the period within which the embezzlement took place. Rather, he delegated that duty to his bookkeeper who is charged with embezzlement. The defendant discovered the forgeries sometime in 1995 and reported them to the bank on April 6, 1995.

## STANDARD OF REVIEW

Our standard of review in considering the propriety of summary judgment is as follows:

> The standards governing an appellate court's review of a trial court's action on a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the

3

requirements of Tenn. R. Civ. P. 56 have been met. <u>Cowden v. Sovran Bank/Central South</u>, 816 S.W.2d 741, 744 (Tenn. 1991). Tenn. R. Civ. P. 56.03 provides that summary judgment is only appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, <u>Byrd v. Hall</u>, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as matter of law on the undisputed facts. <u>Anderson v. Standard Register Co.</u>, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. <u>Downen v. Allstate Ins. Co.</u>, 524 (Tenn. 1991).

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. <u>Byrd</u>, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion. Id.

<u>Carvell v. Bottoms</u>, 900 S.W.2d 23 (Tenn. 1995).

The chancellor issued a scholarly memorandum opinion in which he found that there were some disputed issues of fact but that there was no genuine issue of a material fact which required that the case be tried. The chancellor noted that "[o]ne of the fundamental principles of commercial law is that 'no person is liable on an instrument unless his signature appears thereon'" citing <u>Kaley v. Union Planter's Nat'l Bank</u>, 775 S.W.2d 607, 609. He further correctly noted that there are exceptions to this general rule. The exception upon which the court bases its decision is the provisions of T.C.A. § 47-4-406, which at all times material provided as follows:

4

**47-4-406, Customer's duty to discover and report unauthorized signature or authorization.** —(1) When a bank sends to its customers a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the **customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof**. (Emphasis added).

(2) If the bank establishes that the customer failed with respect to an item to comply with his duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:

(a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen (14) calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) A customer who does not within one (1) year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three (3) years from that time discover and report any unauthorized endorsement is precluded from asserting against the bank such unauthorized signature or endorsement or such alteration.

(4) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim [Acts 1963, ch. 81, § 1 (4-406)1 1991, ch. 52, § 3.]

The defendant insists that it is necessary to look to the legislative history of T.C.A. § 47-4-406 for a proper interpretation of the enactment. We are of the opinion that the statute is unambiguous and that the legislative history is irrelevant.

> The most basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. Worrall v. Kroger Co., 545 S.W.2d 736 (Tenn. 1977). Legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. National Gas Distributors, Inc. v. State, 804 S.W.2d 66 (Tenn. 1991). Where the language contained within the four corners of a statute is plain, clear, and unambiguous and the enactment is within legislative competency, "the duty of the courts is simple and obvious, namely, to say sic lex scripta, and obey it." Miller v. Childress, 21 Tenn. (2 Hum.) 319, 321-22 (1841).

The defendant also insists that the bank is subject to comparative negligence as adopted in McIntyre v. Ballentine, 833 S.W.2d 52 (Tenn. 1992) We find no authority for this proposition as the statute existed at times material to this dispute. The statute was amended in 1995. The 1995 amendment added several provisions to T.C.A. § 47-4-406 including a provision that "[i]f the customer proves that the bank did not pay the item in good faith, the preclusion under subsection (d) does not apply." The comments to the official text after the 1995 amendment seem to indicate that comparative negligence may now be a consideration

6

under this section of the code. The comments, in pertinent part are as follows:

> 4. Subsection (e) replaces former subsection (3) and poses a modified comparative negligence test for determining liability. See the discussion on this point in the Comments to Sections 3-404, 3-405, and 3-406. The term "good faith" is defined in Section 3-103(a)(4) as including "observance of reasonable commercial standards of fair dealing." The connotation of this standard is fairness and not absence of negligence.

Since, however, this amendment was not enacted until after the dates material to this case, the amendment has no consequence as to the outcome here. We believe that the same reasoning as applied in Vending Chattanooga, Inc., v. American Nat'l Bank & Trust Co., 730 S.W.2d 624 (Tenn. 1987) is applicable here. In Vending, the court noted:

> In a forgery case, we start with the basic premise and rule of law that between the customer and the bank, the bank must bear the loss where monies have been paid out due to a third party forging the customer's signature on a check. Tenn. Code Ann § 47-3-401(1), provides "No person is liable on an instrument unless his signature appears thereon." The signature of the drawer is one of the essential elements to the validity of a check and the general rule is the bank must know the genuineness of the depositor's signature. American National Bank v. Miles, 18 Tenn. App. 440, 79 S.W.2d 47 (1935).

> An exception to this general rule is contained in T.C.A. § 47-4-406, which, as pertinent here provides:

> Customer's duty to discover and report unauthorized signature or alteration. --(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds

7

the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen (14) calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).[1]

The appellant bank contends that the trial court and the Court of Appeals were in error in the application of the facts of this case to the law as contained in T.C.A. § 47-4-406, in that: (1) plaintiff, Vending Chattanooga, Inc., did not exercise reasonable care to examine its bank statement and the enclosed checks in order to discover the unauthorized signatures of its president on the forged checks, and failed to report the forgeries to the bank as required by law; and (2) the bank exercised ordinary care in honoring the checks bearing the forged signatures.

All forty checks involved "an unauthorized signature or alteration of the same wrongdoer," and thus the special provision of subsection (2)(b) of T.C.A. § 47-4-406 comes into play. Thus, if the customer is found not to have exercised reasonable care in examining the

---

[1]This provision was removed by the 1991 amendment.

bank statements, the bank would not be liable for forgeries paid after the first forged check and statement was available to the customer for a reasonable period not exceeding fourteen calendar days before the bank receives notification from the customer of the forgery.

The defendant readily admits that he did not examine the statements of account and checks that were sent to him by the bank. His deposition testimony discloses the following:

\* \* \* \* \*

Q. All right. But with respect to, say, this period of about a year and a half, two years that she [the bookkeeper] worked for you, how many times do you think you would have looked at a bank statement from First Tennessee Bank on this account?

A. Maybe four or five times.

Q. All right. Was there anything that you noticed on any of those four or five occasions that was un-usual?

A. Nothing unusual at the time.

Q. All right, sir. But did you not attempt to match the checks that were in those statements with the statements themselves, did you?

A. No, sir. I just accepted it as a true copy and whatever.

Q. But you would be aware of the fact that the best way or easiest way to detect a forgery would be to compare the check itself with the entry on the statement, correct, sir?

A. That's correct.

Q. All right. In other words, you looked at numerous checks here a few minutes ago and could tell us easily which were not forgeries, right?

A. Well, I looked at these at length an hour or two ago. I didn't study the ones that came through as closely as I did these today.

Q. My point is, Dr Quillian, had you looked at the checks when they came in each month, each and every month, month in and month out, you could have detected which were your signatures and which were forgeries?

A. If I'd been alert, alert enough to, I would have, but I had no idea that anything was wrong.

Q. Okay. But I'm not asking you, and I would ask or request that you answer my question. Had you looked at those checks, you could have detected which ones were forgeries, could you not?

A. I could. I have done so today.

*       *       *       *       *

Simply stated, the defendant failed to exercise reasonable care and diligence in discovering the forgeries and did not timely notify the bank. "... a depositor must be held chargeable with knowledge of all the facts that a reasonable and prudent examination of the returned bank statements would have disclosed had it been made by a person on the depositor's behalf who had not participated in the forgeries." Vending Chattanooga, supra.

In conclusion, we concur with the findings of the trial court that there are no material issues in this case which require a trial. We affirm the judgment of the trial court in all respects.

10

Costs of this case are assessed to the defendant. This case is remanded to the trial court.

_____
Don T. McMurray, Judge

CONCUR:

_____
Herschel P. Franks, Judge

_____
Charles D. Susano, Jr., Judge

11

IN THE COURT OF APPEALS

| | | |
|---|---|---|
| FIRST TENNESSEE BANK, NATIONAL ASSOCIATION, | ) | HAMILTON CHANCERY |
| | ) | C. A. NO. 03A01-9701-CH-00014 |
| | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | HON. R. VANN OWENS |
| | ) | CHANCELLOR |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| JESSE O. QUILLIAN, | ) | AFFIRMED AND REMANDED |
| | ) | |
| Defendant-Appellant | ) | |

## JUDGMENT

This appeal came on to be heard upon the record from the Chancery Court of Hamilton County, briefs and argument of counsel. Upon consideration thereof, this Court is of opinion that there was no reversible error in the trial court.

We affirm the judgment of the trial court in all respects. Costs of are assessed to the defendant. This case is remanded to the trial court.

PER CURIAM